493 A.2d 78

COMMONWEALTH of Pennsylvania, Appellant,

v.

Gerald WOODSON.

Superior Court of Pennsylvania.

Submitted May 24, 1984.

Filed March 22, 1985.

Reargument Denied June 3, 1985.

Petition for Allowance of Appeal
Denied Oct. 15, 1985.

Eric B. Henson, Deputy District Attorney, Philadelphia, for Commonwealth, appellant.

John Packel, Chief, Appeals, Assistant Public Defender, Philadelphia, for appellee.

Before DEL SOLE, MONTEMURO and HOFFMAN, JJ.

HOFFMAN, Judge:

The Commonwealth contends on appeal that the trial court erred in granting appellee's motion in arrest of judgment. We agree and, accordingly, reverse and remand for the disposition of appellee's outstanding post-verdict motions.

On February 16, 1982, Catherine Brooks encountered a masked burglar in her North Philadelphia home. After the man fled with her purse, she called the police. The responding officers arrested appellee as he left the alley behind the

Brooks house. Subsequently, a search of the appellee's person revealed some money, including a peculiarly-folded dollar bill, and two small safety pins. At trial, Brooks testified that she had two small safety pins and a bill folded in the same fashion in her purse when it was stolen.

Appellee was charged with burglary, theft, and criminal trespass. On April 15, 1982, he filed a motion to suppress the physical evidence taken from him in the custodial search, alleging, *inter alia*, that his arrest was without probable cause. On June 19, the Honorable Eugene E.J. Maier heard and denied the motion. On September 28, the Honorable Lawrence Prattis, sitting without a jury, found appellee guilty of burglary and criminal trespass. Appellee then filed several timely post-verdict motions. On December 13, 1982, Judge Prattis granted appellee's motion in arrest of judgment, ruling that the motion to suppress should have been granted.[1] This appeal followed.

Our function on review is to determine

whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defendant as, fairly read in the context of the record as a whole, remains uncontradicted.

*Commonwealth v. Hunt*, 280 Pa.Superior 205, 207–08, 421 A.2d 684, 685 (1980); *see also Commonwealth v. Crissy*, 304 Pa.Superior 38, 40, 450 A.2d 89, 90 (1982). In the instant case, the suppression court failed to comply with Pa.R.Crim.P. 323(i) which requires the entry on the record of a "statement of findings of fact and conclusions of law as to whether the evidence was obtained in violation of the defendant's rights...." We need not remand for another

---

1. In its Pa.R.A.P. 1925(a) opinion, the lower court conceded that upon finding that the motion to suppress should have been granted the appropriate remedy was to order a new trial rather than arrest judgment. (Lower Court Opinion at 4–5).

suppression hearing, however, because we find that the record, including the transcripts of the suppression hearing and trial, is sufficient to allow us to dispose of appellee's claim of illegal arrest. *See Commonwealth v. Williams,* 323 Pa.Superior 512, 526, 470 A.2d 1376, 1384 (1984).

We must first decide at what point appellee was arrested. An arrest is defined as "any act that indicates an intention to take the person into custody and subjects him to the actual control and will of the person making the arrest." *Commonwealth v. Lovette,* 498 Pa. 665, 671, 450 A.2d 975, 978 (1982), *cert. denied,* 459 U.S. 1178, 103 S.Ct. 830, 74 L.Ed.2d 1025 (1983). In the instant case, appellee was detained upon leaving the alley and being transported back to the Brooks house, although he was not formally arrested until later. We believe that these acts indicated an intention to take appellee into custody and to subject him to the control and will of the arresting officer. We therefore find that appellee was arrested after he was detained and questioned at the alley.

We must next determine whether there was probable cause to support this arrest. Probable cause for a warrantless arrest exists if the facts and circumstances known to the officer at the time of the arrest would warrant a prudent person in believing that a criminal offense had been committed, and that the suspect was the perpetrator of the offense. *Commonwealth v. Stokes,* 480 Pa. 38, 43, 389 A.2d 74, 76 (1978); *Commonwealth v. Woodard,* 307 Pa.Superior 293, 297, 453 A.2d 358, 360 (1982). Furthermore, although flight alone is not sufficient to establish probable cause to arrest, it may be coupled with additional facts which point to a suspect's guilt and establish probable cause to arrest. *Commonwealth v. Gease,* 304 Pa.Superior 433, 450 A.2d 989 (1982). Here, the police spoke with Brooks and determined that her house had been ransacked and her purse stolen. She described the intruder as a young black man wearing a beige sweater or shirt.

(N.T. June 19, 1982 at 33; September 28, 1982 at 29–30). A jacket, apparently left by the fleeing intruder, was found by an open window overlooking an alley behind the Brooks house. (N.T. June 19, 1982 at 33–34). The arresting officer also heard dogs barking at the far end of the alley, leading him to believe that the intruder might still be hiding in the alley.[2] (*Id.* at 33, 34, 42–43). When the officer went outside to investigate, he saw appellee leaving the alley wearing a beige short-sleeved sweater and no jacket, despite the cool weather.[3] (*Id.* at 34–35). Moreover, when appellee saw the uniformed officer, he "picked up his pace" and walked rapidly in the opposite direction, ignoring the officer's repeated calls to stop. (*Id.* at 44–45, 47–50). When the officer stopped and questioned appellee, appellee said that he had gone into the alley to urinate. However, upon checking the alley, the officer found no evidence to substantiate this explanation. (*Id.* at 36). Therefore, we find that appellee's proximity to the scene of the crime, the correspondence of his appearance to Brooks's description of the intruder, his attempt to evade the police officer and his unsubstantiated explanation for his presence in the alley combined to afford the police officer probable cause for a warrantless arrest.

Accordingly, we reverse the order arresting judgment, reinstate the guilty verdicts, and remand for disposition of appellee's remaining post-verdict motions.

2. Appellee argues that an intruder was not likely to have remained in the alley for over twenty minutes after fleeing the Brooks house. (Appellee's Brief at 13). We believe, however, that a contrary inference is equally probable. Brooks testified that, after the intruder fled, she screamed for help from an open window. (N.T. June 19, 1982 at 24). Thus, a prudent burglar may very well have decided to wait in the alley until the commotion had died down and the coast was clear.

3. The parties stipulated that the air temperature was between fifty and sixty degrees Farenheit at the time of the incident. (N.T. September 28, 1982 at 76). Nevertheless, the arresting officer described the day as "chilly," recalling that he was wearing a winter jacket. (N.T. June 19, 1982 at 35, 46, 50). In light of these circumstances and considering the fact that a jacket was left at the Brooks house, we think that appellee's appearance in short sleeves was sufficient to warrant suspicion.

Reversed and remanded for proceedings consistent with this opinion. Jurisdiction is not retained.

DEL SOLE, J., files a dissenting opinion.

DEL SOLE, Judge, dissenting:

I agree with the majority's finding that Appellee was under arrest at the time he was transported to the victim's residence for identification. However, because I believe there was no probable cause to arrest Appellee, I would affirm the trial court's finding that the search of Appellant was illegal and that the evidence obtained in the search, two safety pins and an amount of currency including an alleged peculiarly folded dollar bill, should have suppressed. While the actual alleged dollar bill with the peculiar fold was never entered into evidence, a fact I find disturbing, I would find that the demonstration by the police officer and the victim of how the bill was folded should have been suppressed. In addition, my review of the record leads me to conclude that the evidence, even including that which should have been suppressed, was insufficient to sustain a conviction for burglary. Thus, I would affirm the trial court's arrest of judgment despite the trial court's conclusion that there was sufficient evidence introduced at trial to support Appellee's conviction.

This case is disturbing in that not only did the police lack probable cause to arrest and then search Appellee but that the evidence introduced at trial was so flimsy that it could not possibly support a conviction for burglary. A close reading of the record reveals that the victim's description of the alleged burglar was very sketchy and that she failed to identify Appellee as the burglar at the time of Appellee's arrest on that date of the crime or at trial. In addition, the evidence discovered in the search of Appellee hardly provides a strong link between the crime and Appellee. The evidence discovered consisted solely of two safety pins and

a quantity of currency totaling $22.60 in the following denominations: two five, eight ones and $4.60 in change. One of the dollar bills was also allegedly folded in a peculiar manner similar to a bill contained in the stolen purse. However, a close review of the victim's testimony reveals that she was uncertain as to the amount of money taken. Further, the record reveals that despite the victim's uncertainty as to the amount of money taken the police gave the money obtained from Appellee to the victim, including the peculiarly folded dollar bill. Thus, at trial all that was introduced was the two safety pins and a demonstration by the police officer who searched Appellee and the victim as to how the dollar bill was peculiarly folded. I am disturbed not only that the money taken from Appellant was given to the victim before the completion of the criminal proceedings but that actual peculiarly folded dollar bill was not retained as evidence by the police, especially since that dollar bill was, as I read the record, a crucial piece of evidence on which Appellee's conviction rested. The only other evidence against Appellee was the testimony of the arresting officer which I find far from establishing any guilt on Appellee's part.

In conclusion, not only was there a lack of probable cause to arrest, but that there was no identification by the victim and the chief piece of evidence against the accused was not preserved for trial by the police. The majority and the trial court obviously believe that a burglary conviction can be based upon such evidence. While I would concede that sufficient evidence need not be overwhelming evidence of guilt, I believe that in that instant case the evidence was insufficient. Thus, I would affirm the trial court's arrest of judgment.