617 A.2d 764

**In the Interest of A.P.**

**Appeal of A.P.**

Superior Court of Pennsylvania.

Argued June 1, 1992.

Filed Dec. 7, 1992.

---

Bradley S. Bridge, Philadelphia, for appellant.

Alan Sacks, Asst. Dist. Atty., Philadelphia, for Com., participating party.

Before ROWLEY, President Judge, and WIEAND, CIRILLO, OLSZEWSKI, MONTEMURO *, POPOVICH, JOHNSON, HUDOCK and FORD ELLIOTT, JJ.

HUDOCK, Judge:

The question which brings this matter to this Court *en banc* is: What means, if any, are available to a juvenile to perfect his constitutional right to appellate review of a disposition order when his counsel was ineffective in failing to file a direct appeal, and relief is unavailable under the Post Conviction Relief Act?[1]

■ This appeal comes to us as an appeal from an order denying Appellant's (A.P.'s) motion to appeal *nunc pro tunc.* A.P. was adjudicated a delinquent following a hearing on February 26, 1990, concerning charges that he possessed sixty-four vials of crack cocaine. He was placed on probation at the conclusion of the hearing. A.P.'s counsel filed post-trial motions[2] which were denied on April 16, 1990. On May 4, 1990, counsel[3] filed a motion for leave to appeal within thirty (30) days (the *nunc pro tunc* motion). This motion was denied on May 9, 1990. A.P.'s trial counsel then filed a notice of

* The Honorable Frank J. Montemuro, Jr., now Justice Montemuro, participated and voted in this matter prior to his elevation to The Supreme Court of Pennsylvania.

1. 42 Pa.C.S. §§ 9541–9546 (Purdon Supp.1992).

2. The trial court stated in its opinion that the use of post-trial motions was recently approved by this Court in *In The Matter of Brandon Smith,* 393 Pa.Super. 39, 43, 573 A.2d 1077, 1079 (1990) (en banc). We note, however, that on this issue the vote was 6 to 3 *against* implementing a post-trial motions procedure in juvenile proceedings. We express no opinion on the propriety of the use of post-trial motions in the present case, as the issue is not before us.

3. New counsel, also with the same public defender's office, filed this motion. Although we recognize the general rule that counsel may not argue the ineffectiveness of other counsel within the same public defender's office, *Commonwealth v. Fetzner,* 372 Pa.Super. 469, 539 A.2d 890 (1988), *alloc. den.,* 520 Pa. 602, 553 A.2d 965, we also recognize the exception for reversible error which is apparent from the record. *Fetzner, supra.*

appeal from the denial of post-trial motions on May 11, 1990,[4] and a notice of appeal from the denial of the motion for *nunc pro tunc* appeal was filed May 17, 1990.

A.P. frames the issues as follows:

1. Did not the lower court err by refusing to grant appellant leave to file an appeal *nunc pro tunc* where the failure to timely file [a] notice of appeal was due to ineffective assistance of counsel that was apparent on this record?

2. Did not the lower court err by refusing to suppress a controlled substance found during a search incident to an arrest where the arrest was made solely because appellant was an Hispanic male, about 5'8" in height, seen exiting a house where a homicide had occurred five days earlier and the suspect in the homicide was "possibly" an Hispanic male about 5'8" in height?

Appellant's Substituted Brief at p. 2. We will discuss the issues in the order presented above.

■ A.P. claims that he has been denied his right to a direct appeal because of the trial court's denial of his motion for a *nunc pro tunc* appeal. He claims that because he is a juvenile, a *nunc pro tunc* appeal is his only means for challenging the stewardship of his trial counsel who, he claims, caused him to lose his appeal rights. We agree.

■ We note, initially, that both juveniles and adults alike have a right to appeal from a court of record. Pennsylvania Constitution, Article V, § 9 reads:

There shall be a right of appeal in all cases to a court of record from a court not of record; and there shall also be a right of appeal from a court of record or from an administrative agency to a court of record or to an appellate court, the selection of such court to be as provided by law; and there shall be such other rights of appeal as may be provided by law.

4. The post-trial motion appeal at No. 1370 Philadelphia 1990 was quashed as untimely on January 31, 1991, having been filed more than thirty (30) days after the dispositional order placing A.P. on probation.

Because juvenile court is a court of record, the right of appeal attaches. We also note that juveniles are entitled to the assistance of counsel, *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); 42 Pa.C.S.A. § 6337 (Purdon 1982),[5] which includes the right to *effective* assistance of counsel. As we recently held:

> To assume that what is meant by assistance of counsel does not include the concept of able, effective representation is to ascribe to the statute a ludicrous result, that is, that such counsel need not be able to perform appropriately, or indeed at all, to fulfill the legislative mandate. The right to counsel prescribed by the Juvenile Act must be read *in pari materia* with the Rule of Statutory Construction, 1 Pa.C.S.A. § 1922(1), which specifies that:

>> In ascertaining the intent of the General Assembly in the enactment of a statute, the following presumptions, among others, may be used.

>> (1) That the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.

> *See also, Gruver v. Gruver*, 372 Pa.Super. 194, 539 A.2d 395 (1988).

*In The Matter of Brandon Smith*, 393 Pa.Super. 39, 43, 573 A.2d 1077, 1079 (1990) (en banc). Therefore, A.P. was not only entitled to the assistance of counsel, but to the *effective* assistance of counsel in the proceedings against him.

5. § 6337. **Right to counsel**
 Except as otherwise provided under this chapter a party is entitled to representation by legal counsel at all stages of any proceeding under this chapter [The Juvenile Act] and if he is without financial resources or otherwise unable to employ counsel, to have the court provide counsel for him. If a party appears without counsel the court shall ascertain whether he knows of his right thereto and to be provided with counsel by the court if applicable. The court may continue the proceeding to enable a party to obtain counsel. Counsel must be provided for a child unless his parent, guardian, or custodian is present in court and affirmatively waive it. However, the parent, guardian, or custodian may not waive counsel for a child when their interest may be in conflict with the interest or interests of the child. If the interests of two or more parties may conflict, separate counsel shall be provided for each of them.

■■■ Unlike the review necessary for ordinary claims of ineffectiveness where we would first determine if appellant's ineffectiveness claim is of arguable merit, *see generally, Commonwealth v. Davis*, 518 Pa. 77, 541 A.2d 315 (1988), counsel's failure to properly effectuate an appellant's constitutional right to appeal, unless expressly waived by an appellant,[6] is ineffective *per se*. *See Commonwealth v. Wilkerson*, 490 Pa. 296, 299, 416 A.2d 477, 479 (1980) ("[The] requirement that counsel protect the appellate right of an accused extends even to circumstances where the appeal is 'totally without merit.' "). Once it is determined that an appellant was denied his or her constitutional right of direct appeal, the proper course of action is to grant the appellant leave to file a direct appeal *nunc pro tunc*. *Commonwealth v. Hoyman*, 385 Pa.Super. 439, 561 A.2d 756 (1989). Because counsel is ineffective *per se* for failing to protect this right, the appellant is entitled to a direct appeal *nunc pro tunc* without considering the ability to establish the merit of the issues sought to be raised on direct appeal. *Commonwealth v. Hoyman, supra* (citing *Commonwealth v. Ciotto*, 382 Pa.Super. 458, 555 A.2d 930 (1989)).

■■■ As stated above, following the denial of post-verdict motions, new counsel for A.P., realizing that the time for appeal from the disposition order had already run, filed a motion for permission to appeal *nunc pro tunc*. In this motion, he raised trial counsel's ineffectiveness in failing to file a timely notice of appeal. Without reference to the claim of ineffectiveness, the trial court found that, because fraud or breakdown in the courts was not alleged or proven, it could not enlarge the time in which A.P. could file an appeal. Pa.R.A.P. 903(a) (Purdon 1990). This was error.

While we agree that generally the trial court's discretion in granting a *nunc pro tunc* appeal is limited to a finding of fraud or a breakdown in the processes of the court, *see Commonwealth v. Englert*, 311 Pa.Super. 78, 457 A.2d 121 (1983), because A.P. was denied his constitutional right to appeal his juvenile disposition due to trial counsel's ineffective-

6. There is no indication in the present record that A.P. did not desire to appeal the disposition order.

ness, the proper course to be taken is to grant the right to appeal *nunc pro tunc. Commonwealth v. Hoyman, supra.* A.P. has no other means of redress; a *nunc pro tunc* appeal is the only means by which a juvenile can challenge the stewardship of his trial counsel because the Post Conviction Relief Act; *supra,* which would be the remedy for an adult, is not available to a juvenile. *See In the Interest of DelSignore,* 249 Pa.Super. 149, 375 A.2d 803 (1977); *Brandon Smith, supra.* If the constitutional right to appellate review is to have any meaning under these circumstances, it must be protected through a *nunc pro tunc* appeal.

█ Because we find that A.P. was denied his constitutional right to appeal the disposition order, we reverse the trial court and find that A.P.'s motion for *nunc pro tunc* appeal should have been granted. "However, it is not necessary for us to remand the case to the trial court. Because the substantive issues appellant seeks to have considered on direct appeal have been briefed and argued by the parties, and, the record is complete, we may consider them at this time in the context of a *nunc pro tunc* direct appeal." *Commonwealth v. Hoyman* 385 Pa.Super. at 444, 561 A.2d at 759. While the Commonwealth here has not briefed the suppression issue, asserting that the appeal raising the issue has been quashed and therefore not before us, we find the Commonwealth's reasons for ignoring the issue sophistic. Appellant's brief makes it clear that he sought to raise the issue, whatever the technical propriety of so doing. The Commonwealth knew, or should have known, that if this Court decided the issue of the *nunc pro tunc* appeal in A.P.'s favor, judicial economy would dictate that this Court address the only substantive issue raised—the suppression issue—rather than order a remand to allow the filing of a new appeal with the resultant waste of time and judicial resources. In short, we hold the Commonwealth declined to address the issue at its peril. We therefore turn to A.P.'s second issue involving the suppression of evidence seized from him at the time of his arrest.

Our standard for reviewing the denial of a motion to suppress evidence is well-established:

Our function on review of an order denying a motion to suppress is to determine whether the factual findings of the lower court are supported by the record. In making this determination, we are to consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. If, when so viewed, the evidence supports the factual findings, we are bound by such findings and may reverse if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Jackson*, 359 Pa.Super. 433, 435, 519 A.2d 427, 429 (1986), citing *Commonwealth v. Cavalieri*, 336 Pa.Super. 252, 254–55, 485 A.2d 790, 791 (1984).

■ The trial court found the following facts in reaching its decision to deny Appellant's motion to suppress:

The Commonwealth presented the testimony of Police Officer James Gallagher who testified that on February 7, 1990 at approximately 4:00 a.m. he was investigating a homicide that had occurred on February 2, 1990 at 1452 Ithan Street. The officer had been given a description of the perpetrator which described a male "approximately five foot eight inches (5'8") [tall], light skinned, possibly hispanic with a full face." (N.T., February 26, 1990, pgs. 4–5).

When Officer Gallagher arrived at the location he observed the defendant and another male coming down the steps of 1452 Ithan Street. Officer Gallagher stopped the two males and patted them down for his own protection. [2. Officer Gallagher was informed that the perpetrator of the homicide was carrying a gun. (N.T., p. 7).] He took note that the defendant was an hispanic male in a black neighborhood and further observed that he fit the rest of the description. At that point he put handcuffs on the defendant and let the other male go upon finding no weapons. (N.T., pgs. 7–8).

Officer Gallagher subsequently searched the defendant and found sixty-four vials of what he believed to be crack cocaine (N.T., p. 9). Six of those vials were later analyzed and tested positive for the presence of cocaine.

Trial Court Opinion at pp. 2–3. We find that after a review of the transcript from the suppression hearing, the record supports the facts found by the trial court. Because we find that the record supports the factual findings, we must turn to the conclusions of law drawn by the trial court from these facts.

 The parties do not dispute that the police made a valid investigatory stop, initially, under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Appellant argues that although the officer had the requisite reasonable suspicion to stop Appellant initially, the officer did not have probable cause to arrest him. We agree. "The established test for determining whether an officer had sufficient probable cause to legally justify a warrantless arrest involves looking at the facts and circumstances confronting the officer at the time of the arrest." *Commonwealth v. Ellis*, 354 Pa.Super. 11, 17, 510 A.2d 1253, 1256 (1986).

> [w]hen we examine a particular situation to determine if probable cause exists, we consider all the factors and their total effect, and do not concentrate on each individual element. . . . We also focus on the circumstances as seen through the eyes of the trained officer, and do not view the situation as an average citizen might. . . . Finally, we must remember that in dealing with questions of probable cause, we are *not* dealing with certainties. We are dealing with the factual and practical considerations of everyday life on which reasonable and prudent men act. This is not the same "beyond-a-reasonable-doubt" standard which we apply in determining guilt or innocence at trial.

*Commonwealth v. Ellis* at 17, 510 A.2d at 1256, citing *Commonwealth v. Simmons*, 295 Pa.Super. 72, 83, 440 A.2d 1228, 1234 (1982), *quoting Commonwealth v. Devlin*, 221 Pa.Super. 175, 178, 289 A.2d 237, 239 (1972) (emphasis in original).

In *Commonwealth v. Ellis, supra,* we found that probable cause did exist to arrest the defendant because the police had received a radio broadcast concerning a burglary of an industrial equipment company and the theft of two yellow Chevrolet pickup trucks with the company name printed on the side. The police observed one such truck in a residential driveway

approximately fifteen minutes later. Three individuals were in the process of unloading the truck. Upon seeing the police officers they fled, but one was successfully apprehended a short time later. We found that, taken together, the evidence was sufficient to establish probable cause.

Appellant cites *Commonwealth v. Hicks*, 434 Pa. 153, 253 A.2d 276 (1969) in support of his position that probable cause did not exist to arrest him. *Hicks*, however, involves the threshold question of whether reasonable suspicion exists to make a *Terry* stop. In fact, the Supreme Court noted that the parties did not contend there was probable cause to arrest at the inception of the seizure. In agreeing that such a contention was meritless, the court stated:

> The Commonwealth does not now contend, nor has it ever contended, that the police officers had probable cause to arrest Hicks at the inception of the seizure. This is understandable. At the time of the seizure, the police were seeking, as the perpetrator of the Lloyds' attempted burglary, a mustached negro in his thirties, of a certain height and weight, wearing a brown coat. Hicks was not wearing a brown coat, did not have a mustache, and there was nothing in the record to indicate that he was of the approximate height and weight of the individual sought. In short, the only manner in which Hicks fit the description of the individual the police were seeking, as far as the record discloses, is that he was a negro in his thirties. This, in itself, was clearly not sufficient to establish probable cause.

*Commonwealth v. Hicks* at 158, 253 A.2d at 279–280. The Court also found that the evidence did not support reasonable suspicion to stop the defendant. Appellant offers *Hicks* to show that the general description to which the defendant did fit would not support even a reasonable suspicion to stop, let alone probable cause to arrest.

Likewise, Appellant cites *Commonwealth v. Berrios*, 437 Pa. 338, 263 A.2d 342 (1970), which also involved the criteria for a *Terry* stop. Here again, the Supreme Court found that the initial stop was not justified by a reasonable suspicion because:

The policemen had no reason to connect them with the reported shooting, except that they were walking near the area; that one was a negro and the other was a Puerto Rican, who wore clothing of the general color reportedly being worn by those involved. The policemen had no information of the physical make-up or characteristics of the men they were seeking, and hence, did not know if Berrios and his companion were of the same description. If the policemen were constitutionally justified in searching Berrios under these circumstances, then every Puerto Rican wearing light clothing and walking with a negro in this area could likewise be validly searched. This, we cannot accept. *Commonwealth v. Berrios* 437 Pa. at 341, 263 A.2d at 344.

Finally, both Appellant and the trial court cite *Commonwealth v. Anderson,* 360 Pa.Super. 466, 520 A.2d 1184 (1987). In *Anderson,* we cited several cases in which certain factors were significant in making the determination of whether probable cause existed:

In *Commonwealth v. Woodson,* [342 Pa.Super. 392, 493 A.2d 78 (1985) ], we held that the defendant's proximity to the scene of the crime, the correspondence of his appearance to the victim's detailed description of the intruder, his attempt to evade the police, and his unsubstantiated explanation for his presence in the alley behind the victim's house, taken together provided the police officer with probable cause to arrest. *Id.* at 396, 493 A.2d at 80. In *Commonwealth v. Williams,* 317 Pa.Superior Ct. 456, 465, 464 A.2d 411, 415 (1983), we held that the defendant's matching of the description given by the victim, his proximity to the scene of the crime both in time and place and his attempt to flee all provided the police with probable cause to arrest. *See also Commonwealth v. Derrick,* 322 Pa.Superior Ct. 517, 532, 469 A.2d 1111, 1119 (1983) (flight in and of itself is not sufficient to establish probable cause, but flight coupled with some other fact may be sufficient); *Commonwealth v. Bridgeman,* 310 Pa.Superior Ct. 441, 447, 456 A.2d 1017, 1020 (1983) (officer's observance of goods in defendant's car matching description of stolen goods, defendant's failure to

produce owner's card for the car or a reasonable explanation for its absence constituted probable cause for arrest); *Commonwealth v. Ryan,* 253 Pa.Superior Ct. 92, 100, 384 A.2d 1243, 1246 (1978) (the defendant's proximity to the scene of the crime both in time and place, and his fast paced walking away were insufficient to provide probable cause for arrest).

*Commonwealth v. Anderson* 360 Pa.Super. at 469–471, 520 A.2d at 1186–1187. After citing those cases, we concluded that:

Here, appellant matched the general description provided by the complainant. He did stand over 5'9" tall and wore a blue sweatshirt with a zipper up the front and red stripes down the sleeves. N.T. August 3, 1983 at 32. He was observed standing on a street corner two blocks away from the scene of the crime over two hours after it had occurred. *Id.* at 33. There is, however, no evidence that appellant was acting suspiciously or that he tried to flee or evade the police. Unlike those cases cited above where we have found facts sufficient to establish probable cause, the only basis for such a determination in this case was appellant's similarity to the general description provided by the victim. We hold that this similarity, taken by itself, was not enough to provide the police with sufficient facts establishing probable cause to arrest.

*Id.* at 471, 520 A.2d at 1187.

More recently, we found probable cause to arrest existed for the following seemingly general description:

The arresting officer received a radio broadcast from his partner stating that the partner had just purchased narcotics from a black man in a blue shirt at a particular street corner.

*Commonwealth v. Chase,* 394 Pa.Super. 168, 172, 575 A.2d 574, 576 (1990) *alloc. den.,* 527 Pa. 608, 590 A.2d 295. But the facts further showed that when the officer arrived at the particular street corner and saw two black men wearing blue shirts, he yelled "police" and one man (the defendant, Chase) fled. The element of flight, combined with the other information the

officer possessed, was sufficient to provide the needed probable cause. Our present case does not involve any suspicious behavior by A.P. and is, therefore, distinguishable from *Chase, supra.*

While we agree that, based on the circumstances known by the police officer at the time he stopped Appellant, there was the required reasonable suspicion to support the *Terry* stop, we do not find the evidence supports the probable cause to arrest Appellant after the officers patted Appellant down in search of weapons. The evidence discloses that Appellant was immediately handcuffed and searched after the initial patdown. There is no record evidence that the officer asked any questions of Appellant or had other evidence which would support a finding of probable cause. The officer's justification for the arrest was that Appellant met the general description of the person under suspicion, and that Appellant was present at the same address where the homicide had occurred five days earlier. We do not find that the presence of an Hispanic male in a predominantly black neighborhood, taken together with the other information known by the police officer, is sufficient to support a finding of probable cause to arrest. We, therefore, reverse the trial court's denial of the motion to suppress, vacate the disposition order, and remand for further proceedings consistent with this opinion.

Order reversed and remanded. Jurisdiction relinquished.

POPOVICH, J., concurs in the result.

CIRILLO, J., files a dissenting opinion.

JOHNSON, J., files a dissenting opinion in which OLSZEWSKI, J., joins.

CIRILLO, Judge, dissenting:

I most respectfully dissent. I would dismiss the appeal of A.P. as moot. The existence of an actual controversy is essential to appellate jurisdiction. *Commonwealth v. Smith,* 336 Pa.Super. 636, 639, 486 A.2d 445, 447 (1984). If, pending appeal, an event occurs which makes relief impossible, the appeal must be dismissed. *Id.* at 640, 486 A.2d at 447. The

only exceptions to the jurisdictional requirement for an actual controversy are when the question is of great public importance or when one of the parties will continue to suffer a detriment from the trial court's decision. *Id.* at 640–41, 486 A.2d at 448.

In this case, the probation period is complete and A.P.'s juvenile disposition for a misdemeanor, possession of a controlled substance, is not a criminal record. *See* 42 Pa.C.S. § 6354. Juvenile matters are distinguished from adult criminal trials. *In re Brandon Smith,* 393 Pa.Super. 39, 66, 573 A.2d 1077, 1090 (1990) (Tamilia, J., concurring in part, dissenting in part); *see also* 42 Pa.C.S. §§ 6336(a)–(d), 6337, 6352–54. The Rules of Criminal Procedure do not apply to juvenile matters. *In re Becker,* 370 Pa.Super., 487, 536 A.2d 1370 (1988); *see also* Pa.Rule Crim.P. 1.

Here there is neither an unresolved question of great public importance, nor will A.P. continue to suffer a detriment. I would, therefore, dismiss the appeal as moot. *Smith, supra.*

JOHNSON, Judge, dissenting.

In February of 1990, A.P., a juvenile, was subjected to a search following arrest and found to be carrying sixty-four vials of crack cocaine on his person. Following a hearing in the Juvenile Division of the Family Court, the Honorable Sheldon C. Jelin found A.P. guilty of possession of a controlled substance and adjudicated him delinquent. A.P. was sixteen years of age at the time of the adjudicatory and dispositional hearing. He was living in New York with his mother, who attended the hearing in the Philadelphia Court of Common Pleas.

At the conclusion of the adjudicatory stage, the assistant defender representing A.P. requested that A.P. be allowed to go back to the jurisdiction in New York City, to the residence of A.P. and his mother on Farragut Road, East Flatbush, Brooklyn. Judge Jelin, after confirming A.P.'s out-of-state residency, placed him on probation. The disposition hearing was concluded as follows:

**THE COURT:** All right. At this point I am going to dispose of the case as follows: I am going to place the defendant [sic] on probation. Probation is to be transferred to Brooklyn, New York, through the interstate compact.

And I'm telling this to you, young man: You stay out of Philadelphia. Is that clear to you?

**THE DEFENDANT:** Yes.

**THE COURT:** Because if you come to Philadelphia, unless you have some very good reason, I will assume that you're here with respect to getting involved in drugs and I'm going to take you off the street and put you in a Juvenile facility. Is that clear to you?

**THE DEFENDANT:** Yes.

**THE COURT:** How soon are you going to leave for New York?

**THE DEFENDANT'S MOTHER:** As soon as you release him to me, your Honor, I'll take him right out of here.

**THE COURT:** Okay.

(Whereupon, the hearing was concluded.)

Adjudicatory/Dispositional Hearing Transcript, February 26, 1990, pp. 42–43.

On March 7, 1990, Judge Jelin received a Motion to Reconsider Verdict. He entered a rule to show cause and scheduled a hearing for March 22, 1990, for consideration of the motion. On the date scheduled for a hearing on the motion, the matter was continued due to the unavailability of counsel. Defense counsel did not attempt to appeal from the disposition order of February 26, 1990, within the allowable thirty day period. The motion for reconsideration was heard and denied on April 16, 1990.

New defense counsel, from the Appeals Division of the same Defender Association that has represented A.P. throughout this matter, filed a Petition for Judicial Permission to File an Appeal Within Thirty Days on May 4, 1990, which was denied following a hearing, on May 9, 1990. The Defender Association filed two separate notices of appeal. The first notice of appeal, filed May 11, 1990, was purportedly from the order of

April 16, 1990, which denied the Motion to Reconsider the Verdict. This appeal was docketed at No. 1370 Philadelphia 1990 in this Court.

The second notice of appeal, docketed in this Court at No. 1413 Philadelphia 1990 and filed May 17, 1990, in the Philadelphia Court of Common Pleas, is brought from the order of May 9, 1990 denying the Petition for Judicial Permission to File an Appeal Within Thirty Days.

Relying on *Commonwealth v. Hoyman*, 385 Pa.Super. 439, 561 A.2d 756 (1989), the Majority on this appeal would find that A.P. has been denied his "constitutional right to appeal" and that the Petition for Judicial Permission to File an Appeal Within Thirty Days should have been granted. The Majority then turns to address the substantive suppression issue. My colleagues find themselves unable to find probable cause to support A.P.'s arrest and, accordingly, reverse the denial of the pre-hearing suppression motion, vacate the disposition order, and remand for further proceedings. I am unable to agree with any of these conclusions and must, therefore, respectfully dissent.

I would first address the ability of this Court to consider the substantive issue. The disposition order, entered February 26, 1990, was a final order from which any direct appeal would have to be taken. Counsel for A.P. concedes as much. The notice of appeal from the order denying the motion to reconsider the verdict was filed May 11, 1990 at No. 1370 Philadelphia 1990. The grant of a rule to show cause on March 7, 1990, was not a grant of reconsideration and, therefore, did not operate to prevent the thirty-day appeal period from expiring. *Valentine v. Wroten*, 397 Pa.Super. 526, 528, 580 A.2d 757, 758 (1990) *appeal denied* 527 Pa. 650, 593 A.2d 422 (1991); *Luckenbaugh v. Shearer*, 362 Pa.Super. 9, 13, 523 A.2d 399, 401 (1987). On January 31, 1991, this Court entered an Order at that docket number, setting forth in its entirety:

## ORDER

The appeal docketed at No. 1370 Philadelphia 1990 is taken from the denial of post-verdict motions filed after

sentencing in juvenile proceedings. The court hereby quashes No. 1370 Philadelphia 1990 as filed more than 30 days after the entry of judgment of sentence. See Pa. R.A.P. 903; *Commonwealth v. McCleary,* 333 Pa.Super. 443, 482 A.2d 651 (1984) (fact that defendant filed motion for a reconsideration did not extend 30–day period within which he was required to take appeal from his judgment of sentence). The petition for consolidation is denied as moot.

In its brief, the Commonwealth properly argues that there is no issue before this Court, on *this* appeal, other than A.P.'s claim that the trial court wrongly denied his request for a *nunc pro tunc* appeal. Brief for Appellee on En Banc Reargument, p. 15. It correctly points out that the appeal at No. 1370 remains quashed as untimely and not subject to review. My colleagues in the Majority do not challenge that the appeal from the juvenile court disposition has been quashed as untimely. The Majority misstates the record in declaring that "the substantive issues appellant seeks to have considered on direct appeal have been briefed and argued by the parties." Opinion by Hudock, J., pp. 146–149. To the contrary, the Commonwealth expressly states, I believe most appropriately:

[5]Should this Court request the Commonwealth to do so, it will, of course, file a brief addressing the substantive and procedural issues that the quashed appeal at No. 1370 raised. Unless this Court so acts, it would truly be illogical and unfair for it to grant relief on an issue raised exclusively in another appeal that the Commonwealth has never had a proper opportunity to contest. *See Commonwealth v. Hart,* 479 Pa. 84, 387 A.2d 845 (1978).

Brief for Appellee on En Banc Reargument, p. 16 n. 5.

I am unaware of any authority which would permit this Court to entertain and decide an issue which had been the principal subject of another, separate direct appeal under circumstances where that separate appeal had been quashed as untimely. The Majority has not responded to the well-reasoned argument set forth by the Commonwealth in declining to argue an issue contained in a separate appeal that has already been quashed. I do not find the Commonwealth's

reasons for not briefing the issue "sophistic." Nor can I join my esteemed colleagues' conclusion that the Commonwealth "knew, or should have known, that ... judicial economy would dictate that this Court address the only substantive issue raised—the suppression issue." Majority p. 148. One might wonder whether counsel for A.P. "knew or should have known", when filing his Motion for Consolidation of the two appeals on August 13, 1990, that this Court would—after quashing the appeal at No. 1370—reach out and decide the substantive issue in the quashed appeal, based upon theories of "judicial economy." Were the Majority to direct me to some, or any, authority for such a proposition, I would be eager to reconsider.

Our Court has recently adopted an amendment to our Internal Operating Procedures whereby we have declared that an order denying a motion to quash "shall be deemed to be the law of the case." I.O.P. 302.H, adopted April 29, 1992. I should think that, *a fortiori*, an order which *grants* a motion to quash would be deemed to be the law of the case. It would appear "unseemly" to this writer for this Court to reverse or overrule a prior order of this Court, in reliance upon which the Commonwealth has abstained from arguing the appeal on the merits. *Compare* I.O.P. 302.H, *Comment.*

Based upon all of the above, I can only conclude that this Court may not properly entertain the substantive suppression issue on the record before us.

I now turn to the issue of whether the trial court erred in denying A.P.'s Petition for Judicial Permission to File an Appeal Within Thirty Days. I find no error. First, let us examine the argument underlying the decision of my colleagues to grant the appeal. On six separate occasions, the Majority refers to A.P.'s "constitutional right to appeal [appellate review]". pp. 144–145, 146–147 (2), and 147–149 (3). Reference is made to Article V, Section 9 of the Pennsylvania Constitution, which guarantees a right of appeal in all cases to a court of record. However, I do not understand my colleagues to be arguing that the Pennsylvania Constitution has been violated. Rather, the argument seems to be that "coun-

sel's failure to properly effectuate an appellant's constitutional right of appeal, unless expressly waived by an appellant, is ineffective [assistance of counsel] *per se.*" p. 147. The Majority cites to *Commonwealth v. Wilkerson,* 490 Pa. 296, 299, 416 A.2d 477, 479 (1980) in support of its contention. I find *Wilkerson* inapposite.

In *Wilkerson,* our Supreme Court considered the denial of a P.C.H.A. petition, filed *pro se,* alleging ineffectiveness of counsel. The defendant, Wilkerson, alleged that he "wanted an appeal and that he took steps to perfect an appeal on his own." *Wilkerson, supra* at 300, 416 A.2d at 479. The Supreme Court stated:

> Clearly, *if, as alleged, Wilkerson wished to appeal* and counsel merely failed to file an appeal and an Anders brief, if appropriate, Wilkerson did not effectively waive his right and counsel would have to be deemed ineffective. Accordingly, *the facts alleged, if proven, would warrant relief and the court should have granted a hearing and given Wilkerson an opportunity to prove he advised counsel of a desire to appeal.*

*Id.* (emphasis added). The Court went on to observe:

> [N]othing is present in this record to contradict Wilkerson's claim that by correspondence he requested an appeal or his claim, made in his pro se petition, that he was misled into believing that, if he successfully prosecuted an appeal and was granted a new trial, he could then be convicted of murder of the first degree.

------

[6] The record can be read as indicating Wilkerson waived his right to file post-verdict motions, but his claim that he was advised he could be convicted of murder of the first degree could serve to show any such waiver was not effective. But, *in any event, an appeal could have raised the validity of the sentence despite the failure to file post-verdict motions if as alleged he asked counsel to file an appeal.*

*Id.* at 302, 416 A.2d at 480. (emphasis added).

The *Wilkerson* case does *not* stand for *per se* ineffectiveness merely upon a showing of a lack of express waiver, as the Majority seems to suggest. The *Wilkerson* case stands for the proposition that (1) an accused has an absolute right to appeal, and *(2) where the accused has declared a desire to take*

*an appeal,* that (3) counsel can be faulted for allowing that right to be waived unless the accused himself effectively waives that right. In vacating the order denying P.C.H.A. relief and remanding for a hearing in *Wilkerson,* our Supreme Court focused on what the accused, himself, had alleged, including the accused's allegations that counsel had misled him and, most importantly, that the accused, himself, desired to take an appeal. The matter was remanded for a hearing at which Wilkerson would have an opportunity to prove his claims. None of that is present in the appeal now before us.

The hearing before Judge Jelin on February 26, 1990, concluded with A.P.'s mother assuring the court that she would remove A.P. from the court and from this Commonwealth, just as soon as the court released A.P. to his mother. Adjudicatory/Dispositional Hearing Transcript, *supra* at p. 42, set forth above. This Court should conclude, based upon the complete record before us, that A.P. exited Pennsylvania on February 26, 1990, returned to Flatbush, and has not been back in Pennsylvania with respect to this juvenile case since February 1990.

A.P. has been represented post-trial in the Family Court and is represented on this appeal by extremely competent counsel. The Petition for Judicial Permission to File an Appeal Within Thirty Days, filed May 4, 1990, does not contain any allegation that A.P. desired to take an appeal, as required by *Wilkerson, supra.* Rather than alleging anything at all concerning the desires or wishes of A.P., the Petition merely sets forth, in its only pertinent part:

5. Although it was trial counsel's intention to preserve the issues for appeal and to perfect that appeal, by the failure to have filed an appeal within 30 days of February 26, 1990 or to have the disposition vacated within that time period, *counsel may have waived the right to appeal.* This is a plain example of ineffectiveness.

WHEREFORE, A[.] P[.], through counsel, requests that this Honorable Court grant him 30 days in which to perfect an appeal.

Respectfully submitted

162

[Defender Association of
Philadelphia]

Petition for Judicial Permission, etc., filed May 4, 1990, un-numbered p. 2, (emphasis added). I am not prepared to charge the omission of reference to A.P.'s desires to inadvertence. *Wilkerson* requires some evidence, *in the record*, that the accused desired to appeal before an analysis as to whether the constitutional right to appeal can be instituted. *Wilkerson, supra* at 10, 416 A.2d at 480–81. This Court need not even speculate that A.P. has bid "good riddance" to this Commonwealth and has no present concern about an appeal, where he has been released on probation and there is nothing in the certified record to even suggest that that probation was effectuated. It is enough that the record is devoid of any indication, even by way of hearsay, that A.P. has had any interest or concern with these proceedings since February 26, 1990. The Petition for Judicial Permission to File an Appeal Within Thirty Days contains no allegation that A.P. desires to perfect an appeal. Without a desire on the part of the accused to take an appeal, there can be no violation of the constitutional right to appellate review.

To the same effect is *Commonwealth v. Hoyman*, 385 Pa.Super. 439, 561 A.2d 756 (1989) upon which the Majority so heavily relies. There, our eminent colleague, the Honorable James E. Rowley, stated, in pertinent part:

We hold that failure of trial counsel to take a direct appeal, *when his client so requests*, is a demonstrated miscarriage of justice within the meaning of [Commonwealth v.] Lawson [519 Pa. 504, 549 A.2d 107 (1988) ]. Here, Mr. Hoyman having established that an important state constitutional right has been denied him is entitled to have that right reinstated and to proceed with a direct appeal. In the case at bar, appellant told the Assistant Public Defender who had represented him at trial that he wanted to take a direct appeal, and it was determined at the PCRA hearing that she knew of appellant's request that a direct appeal was to be filed on his behalf. Through no fault of his own a direct appeal was not filed. Because a

miscarriage of justice has occurred in the case at bar, appellant is entitled to the relief he seeks in this PCRA proceeding, i.e., a **direct** appeal.

*Hoyman, supra* 385 Pa.Super. at 444, 445, 561 A.2d at 758, 759. (Underlining added; bolding in original).

Neither *Wilkerson* nor *Hoyman* support the Majority's assertion that A.P. has been deprived of the constitutional right to an appeal. The manner by which the Majority would resolve this appeal points up, I submit, the difficulties which remain unresolved following this Court's many opinions filed in *In the Matter of Brandon Smith*, 393 Pa.Super. 39, 573 A.2d 1077 (1990) *(en banc)*. In that case, at least five of the judges, and arguably six members of this Court, concluded that post-trial motions are inappropriate following an adjudication of delinquency. *See and compare*, Opinion, Beck, J., concurring and dissenting, 393 Pa.Super. at 54, 56, 573 A.2d at 1084, 1084–86; Opinion, Tamilia, J., concurring and dissenting, 393 Pa.Super. at 58, 61, 573 A.2d at 1086–89; Opinion, Johnson, J., concurring and dissenting, 393 Pa.Super. at 70, 76, 573 A.2d at 1092, 1095.

I am also left uncomfortable by the Majority's refusal to go through a traditional three-prong analysis for ineffectiveness, presumably on its finding that somehow, the Defender Association of Philadelphia is, solely on its self-serving assertion contained in its Petition . . . to File an Appeal, etc., ineffective *per se*. *See Commonwealth v. Durst*, 522 Pa. 2, 3, 559 A.2d 504, 505 (1989). The second prong of the traditional three-prong analysis considers whether the particular course chosen by counsel had any reasonable basis designed to effectuate the client's interests. *Id.*

In *In Re Hutchinson*, 500 Pa. 152, 454 A.2d 1008 (1982), our Supreme Court was required to balance the competing interests of the Commonwealth and of the individual in a civil commitment context. The Court chose to apply an ineffectiveness standard, in reviewing the failure of respondent's counsel to object to certain hearsay testimony, even though the involuntary commitment of an individual based solely on the hearsay testimony of a single witness would be constitutionally

prohibited without regard to counsel's conduct. *In re Hutchinson,* 500 Pa. at 159 n. 8, 454 A.2d at 1011–1012 n. 8; *Commonwealth ex rel. Finken v. Roop,* 234 Pa.Super. 155, 173–74, 339 A.2d 764, 773–74 (1975). In *Hutchinson,* Mr. Justice (now Chief Justice) Nix recognized the clear difference between a criminal case and the involuntary civil commitment proceeding which the Supreme Court faced in that appeal. There, in considering the difficulties which arise when one seeks to overlay a criminal process standard on a civil proceeding, Mr. Justice Nix observed that the "best interest of the client in [civil commitment mental health] cases is not necessarily served by striving to seek the client's release." *In re Hutchinson,* 500 Pa. at 159, 454 A.2d at 1012.

In *In the Matter of Brandon Smith, supra,* this writer questioned whether the release and discharge of a juvenile would be in his best interest, especially if counsel knew or reasonably could have known that the juvenile had discharged a weapon which wounded a party seeking to intervene in a neighborhood disturbance, and the juvenile would benefit from residency at Glen Mills School. *Id.* at 75, 573 A.2d at 1094–95. I concluded that the strict application of the ineffectiveness standard as brought over from criminal proceedings into juvenile court proceedings was contrary to the whole concept of juvenile courts which were created in an attempt to depart from the traditional treatment of children as ordinary criminal defendants.

I would pose the same question to my colleagues here. A.P. was apprehended carrying sixty-four vials of crack cocaine, a quantity sufficient to give rise to an inference that it was possessed with an intention to deliver. A.P. secured a disposition by which he was permitted to depart from Pennsylvania, albeit on probation, without any further penalty. Is it really in A.P.'s best interest, as a sixteen-year old youth, to now have his adjudication of delinquency reversed and the case remanded for further proceedings? What message does this send to A.P. and other youths contemplating involvement in heavy drug trafficking?

The Defender Association of Philadelphia asserts that the issue on this appeal is whether Judge Jelin erred in refusing to grant the Association leave to file an appeal *nunc pro tunc* where the failure to timely file notice of appeal was due to the Association's alleged ineffective assistance of counsel. The only possible evidence of ineffectiveness is Paragraph 5 contained in the Petition, the bulk of which is quoted above at page 9. The paragraph concludes with the self-serving statement of the Association: "This is a plain example of ineffectiveness."

I agree with the Commonwealth that under the present facts, this Court had no jurisdiction over the appeal from the adjudication. Here, defense counsel neglected to ask the trial court to vacate the disposition order pending disposition of motions, and thus, failed to perfect an appeal within thirty days. As I have attempted to point out above, the appeal from the denial of the Motion to Reconsider the Verdict was properly quashed and should not, and could not, be before us. The appeal from the denial of the Petition.... to File an Appeal Within Thirty Days should be reviewed on straight grounds of abuse of discretion. When this is done, it is clear that Judge Jelin properly applied existing law and did not abuse his discretion.

Judge Jelin correctly recognized that time limitations for filing notices of appeal cannot be extended as a matter of indulgence. Trial courts do not have jurisdiction or power to extend or obviate time in which an appeal may be lodged in appellate courts. *Reading Anthracite Company v. Rich,* 525 Pa. 118, 577 A.2d 881 (1990); *Jones v. Unguriet,* 364 Pa. 200, 71 A.2d 240 (1950). Except to relieve fraud or its equivalent, the thirty day time limitation set forth in Pa.R.A.P. 903(a) may not be extended. *Dixon Estate,* 443 Pa. 303, 279 A.2d 39 (1971). Some breakdown in the court's operation may justify an extension. *West Penn Power Company v. Goddard,* 460 Pa. 551, 333 A.2d 909 (1975); *Appeal of Girolamo,* 49 Pa. Cmwlth. 159, 410 A.2d 940 (1980). The Defender Association has not alleged any such excuse(s) on this appeal. Mere negligence of counsel is not a ground for obtaining a *nunc pro*

*tunc* appeal. *Bass v. Commonwealth,* 485 Pa. 256, 401 A.2d 1133 (1979); *In Re Glosser Brothers, Inc.,* 382 Pa.Super. 177, 555 A.2d 129, 145–46 (1989).

Our standard of review in evaluating an order refusing to grant permission to appeal *nunc pro tunc* must surely be whether the trial court abused its discretion or committed an error of law. Judge Jelin, in the case now before us, set forth his reasoning, in his Opinion filed August 2, 1990, for denying the Petition as follows:

In the instant case the adjudication and disposition occurred on February 26, 1990. The Notice of Appeal was filed on May 11, 1990, a full 74 days after the order from which the appeal was taken. Clearly the defendant has exceeded the statutory limitations. Although Post–Verdict Motions were filed and ruled upon they did not toll the statutory limitations because the original order was never stayed or vacated. Technically the application for reconsideration of the verdict should have been filed, thereby, preserving the defendant's right of appeal if the petition for reconsideration was denied.

Notwithstanding the above, the defendant did not file an appeal within thirty days of the entry of the order adjudicating the defendant delinquent and placing him on probation. Defendant's Post–Verdict Motions, which did not toll the appeal period, were denied by this Court. There is no valid reason why Defendant's Petition for Judicial Permission to File an Appeal within 30 days should have been granted.

For all the above reasons the Petition for Judicial Permission to File an Appeal Within 30 Days was properly denied.

Opinion, Jelin, J., August 2, 1990, p. 3 (citation omitted).

I find no error of law or abuse of discretion in the action of the trial court. I would accordingly affirm the order denying permission to appeal *nunc pro tunc.* Since the order arising from the disposition order has already been quashed by this Court, I would refuse to consider the suppression issue sought to be introduced by the Defender Association. If the suppression issue were to be examined, I would concur in the Majori-

ty's finding that the record supports the factual findings of Judge Jelin. Based upon my independent review of the record and the law, I would find no error in Judge Jelin's conclusion that the arrest and search were reasonable.

I find no basis for disturbing the disposition order of February 26, 1990. Hence this dissent.

OLSZEWSKI, J., joins in this dissenting opinion by JOHNSON, J.