630 A.2d 1266

**In the Interest of C.G.**

**Appeal of C.G., Appellant.**

Superior Court of Pennsylvania.

Submitted June 7, 1993.

Filed Sept. 17, 1993.

John W. Packel, Asst. Public Defender, Philadelphia, for appellant.

Kathy L. Echternach, Asst. Dist. Atty., for Com., participating party.

Before McEWEN, KELLY and CERCONE, JJ.

KELLY, Judge.

In this appeal we are asked to determine whether a juvenile, adjudicated delinquent, forfeits the right to file an appeal *nunc pro tunc* on the ground of ineffective assistance of counsel, where the juvenile is on fugitive status after post-trial proceedings commence. We hold that appellant has forfeited his right to an appellate review on the merits of his claims [1]

---

1. Appellant raises two issues for our review. First, appellant asserts that the trial court erred in denying his petition to file an appeal *nunc pro tunc* where trial counsel failed to preserve, in a timely manner,

due to his fugitive status at the time of his appeal. Accordingly, we quash appellant's appeal.

The relevant facts and procedural history of this case may be summarized as follows. On September 16, 1992, appellant, a minor, was adjudicated delinquent for knowing and intentional possession of marijuana[2] and placed on an intensive drug and alcohol rehabilitation program and probation. He was ordered to appear on November 17, 1992 for a probation review hearing. On September 23, 1992, appellant filed a motion to reconsider the verdict and/or to grant post-verdict relief which was denied on October 14, 1992.[3] On October 30,

appellant's right to appeal. Second, appellant challenges the trial court's adjudication of delinquency as erroneous. We do not reach the merits of these issues. However, we draw attention to the decision of *Commonwealth v. Davis*, 421 Pa.Super. 454, 618 A.2d 426 (1992) (*en banc*) (possession of a small amount of marijuana is a "misdemeanor," as expressly classified in the Controlled Substance Act 35 P.S. §§ 780–113(a)(31), (f)(1), (g), rather than a "summary offense").

2. 35 P.S. § 780–113(a)(31).

3. At bar, the procedural anomalies began to occur with the filing of appellant's motion to reconsider the verdict and/or grant post-verdict relief.

We observe at the outset that the Juvenile Act, unlike its predecessors, does not provide for post-trial motions or relief, and the procedures for post-trial review contained in the Pennsylvania Rules of Civil Procedure do not apply to juvenile proceedings unless specifically provided otherwise. Pennsylvania Rule of Criminal Procedure 1(a) provides:

These rules shall govern criminal proceedings in all courts including courts not of record. Unless otherwise specifically provided, these rules shall not apply to juvenile or domestic relations proceedings.

In the note to Rule 1, it is stated:

These rules apply to proceedings involving juveniles only to the extent that the Juvenile Act does not vest jurisdiction in the Juvenile Court. See, e.g., Juvenile Act §§ 6302–6303, 42 Pa.C.S. §§ 6302–6303, 6355 (1982); Vehicle Code 75 Pa.C.S. § 6303 (1977).

Nor may post-trial proceedings be introduced by reason of local rules as the authority to impose local rules must flow from the Juvenile Act, which does not grant such authority, or pursuant to Rule 1(b) of the Rules of Criminal Procedure, which is not applicable. Pennsylvania Rule of Criminal Procedure 6 provides:

b)(1)' [sic] Local rules shall not be inconsistent with any general rule of the Supreme Court or any Act of Assembly.

As stated above, Rule 1 provides the Rules of Criminal Procedure do not apply to juvenile proceedings so that a local rule could not

1992, appellant filed a petition for judicial permission to file an appeal within thirty (30) days alleging the ineffective assistance of trial counsel for failing to appeal within thirty days of the September 16, 1992 order. The petition was denied without a hearing on October 30, 1992. Appellant failed to appear on November 17, 1992 for his probation review hearing. On November 18, 1992, appellant filed the instant appeal from the October 30, 1992 order denying his petition to reinstate his appellate rights *nunc pro tunc*.[4] Following the

impose those rules on such proceedings. Additionally, the Juvenile Act is sui generis and was meant by the legislature to be twofold in purpose: to protect the public interest and rehabilitate youthful offenders. [*In Interest of*] *McDonough* [287 Pa.Super. 326, 430 A.2d 308 (1981)]. Because of the difference in function between the Juvenile Act and Crimes Code, the proceedings of the two are not interchangeable. *In the Interest of Leonardo*, 291 Pa.Super. 644, 436 A.2d 685 (1981).

*In Interest of Smith*, 396 Pa.Super. 624, 631–32, 579 A.2d 889, 893 (1990), *appeal denied*, 527 Pa. 610, 590 A.2d 296 (1991) (quoting *Commonwealth v. Clay*, 376 Pa.Super. 425, 546 A.2d 101 (1988)). In *Matter of [Brandon] Smith*, 393 Pa.Super. 39, 573 A.2d 1077 (1990) (*en banc*), [plurality] the issue of post-trial motions in juvenile cases was revisited by our Court en banc as it related to proceedings leading to claims of ineffectiveness of counsel. The majority voted 6 to 3 in favor of rejecting post-trial motions in juvenile proceedings and, therefore, the statement and rationale of *Clay, supra*, is controlling.

*In Interest of Smith, supra* 396 Pa.Super. at 632, 579 A.2d at 893. Thus, the Order of September 16, 1992 adjudicating appellant delinquent was the order which should have triggered an appeal as to an erroneous adjudication. *See Commonwealth v. Clay, supra*. The final order of a Juvenile Court is the Dispositional Order as to a Delinquent Child, pursuant to 42 Pa.C.S.A. § 6352.

4. A recent *en banc* Superior Court decision noted as follows that a juvenile has no other means of redress:

[A] *nunc pro tunc* appeal is the only means by which a juvenile can challenge the stewardship of his trial counsel because the Post Conviction Relief Act [42 Pa.C.S.A. § 9541 *et seq.*], which would be the remedy for an adult, is not available to a juvenile. *See In the Interest of DelSignore*, 249 Pa.Super. 149, 375 A.2d 803 (1977); *Brandon Smith*, [393 Pa.Super. 39, 573 A.2d 1077 (1990) (*en banc*)]. If the constitutional right to appellate review is to have any meaning under these circumstances, it must be protected through a *nunc pro tunc* appeal.

*In Interest of A.P.*, 421 Pa.Super. 141, 148, 617 A.2d 764, 768 (1992) (*en banc*). The Superior Court proceeded to review A.P.'s substantive

probation review hearing scheduled for December 17, 1992, which appellant did not attend, the trial court issued a bench warrant. The Commonwealth subsequently moved to quash the instant appeal on the basis of appellant's fugitive status during post-trial proceedings.

 Where a defendant is a fugitive at any time after post-trial proceedings commence he forfeits his right to appellate review. *Commonwealth v. Jones,* 530 Pa. 536, 541, 610 A.2d 439, 441 (1992). This forfeiture is irrevocable and cannot be undone despite capture or voluntary return to custody.[5] *Id.* "The rationale behind dismissal of an appeal while a convicted defendant is a fugitive from justice rests upon the inherent discretion of any court to refuse to hear the claim of a litigant who, by escaping, has placed himself beyond the jurisdiction and control of the court, and hence, might not be responsive to the judgment of the court." *In Interest of Dixon,* 282 Pa.Super. 189, 190, 422 A.2d 892, 893, (1980) (quoting *Commonwealth v. Galloway,* 460 Pa. 309, 333 A.2d 741 (1975)) (supporting citations omitted).[6] *See generally*

issues which the parties had briefed and argued. Because the record was complete, this Court saw no necessity for a remand.

5. In *Allen v. Georgia,* 166 U.S. 138, 17 S.Ct. 525, 41 L.Ed. 949 (1897), the United States Supreme Court upheld a state court's dismissal of a fugitive's appeal and the refusal of that court to reinstate the appeal after the defendant's recapture. The Court followed *Allen* in *Estelle v. Dorrough,* 420 U.S. 534, 95 S.Ct. 1173, 43 L.Ed.2d 377 (1975), which upheld the constitutionality of the Texas statute providing for the dismissal of a defendant's appeal where he escapes during its pendency, unless he voluntarily returns within ten days.

6. The Supreme Court of the United States first applied the fugitive dismissal rule in *Smith v. United States,* 94 U.S. 97, 24 L.Ed. 32 (1876) to a defendant who remained at large when his appeal arose before the Court on the basis that there could be no assurance that any judgment the Court issued would prove enforceable. *Ortega–Rodriquez v. United States,* —— U.S. ——, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993).

[O]ur cases consistently and unequivocally approve dismissal as an appropriate sanction when a prisoner is a fugitive during "the ongoing appellate process." Moreover, this rule is amply supported by a number of justifications. In addition to addressing the enforceability concerns identified in *Smith v. United States,* 94 U.S. 97, 24 L.Ed. 32 (1876), and *Bonahan v. Nebraska,* 125 U.S. 692, 8 S.Ct. 1390, 31 L.Ed. 854 (1887), dismissal by an appellate court after a defendant has fled its jurisdiction serves an important deterrent function and

*Commonwealth v. Passaro,* 504 Pa. 611, 476 A.2d 346 (1984) (to preserve a right to appeal, a defendant must comply with the procedures established by this Court; one who deliberately bypasses these orderly procedures is bound by the consequences of his decision).

Our Supreme Court applied the *Jones* holding to juveniles in its recent decision, *In Interest of Thomas,* 533 Pa. 572, 626 A.2d 150 (1993). In *Thomas* the Court stated:

[O]ur holding in *Jones* extends to juvenile defendants, making a juvenile defendant's voluntary escape a per se, irrevocable forfeiture of his right of appeal, where the juvenile defendant is a fugitive at any time after post-trial proceedings commence.

*Id.* —— U.S. at ——, 626 A.2d at 153.

We recognize the severity of such a consequence but nonetheless find that it is warranted in order to maintain the integrity of the appellate process and protect the public interest. These serious considerations do not turn on whether or not the defendant is a juvenile. Flight by juveniles, like their adult counterparts, imperils the ability of the Commonwealth to retry their cases, should that be necessary, because of the failing memories of witnesses, the unavailability or death of witnesses and the loss or deterioration of evidence. Additionally, flight by juvenile defendants is no less disruptive of the appellate process than flight by adult defendants. A fugitive juvenile is equally unresponsive to the appellate courts ...

*Id.*

■ Instantly, a bench warrant was issued for the appellant due to his failure to appear at his probation review hearings on November 17, 1992 and December 17, 1992. Appellant's whereabouts were unknown at the time counsel filed an appellate brief on his behalf. Moreover, appellant remained *in absentia* up to and including the time the Commonwealth

advances an interest in efficient, dignified appellate practice. *Estelle,* 420 U.S. at 537, 95 S.Ct. 1173, 43 L.Ed.2d 377.

*Id.* —— U.S. at ——, 113 S.Ct. at 1204, 122 L.Ed.2d at 593.

moved to quash his appeal on the basis of appellant's fugitive status. Therefore, the holding of *In Interest of Thomas, supra,* is controlling.

Appellant, however, relies on *In Interest of A.P.,* 421 Pa.Super. 141, 617 A.2d 764 (1992) (*en banc*) in support of his argument that the trial court erred by refusing to grant him leave to file an appeal *nunc pro tunc.* The *A.P.* Court determined that failure to preserve a juvenile's appellate rights constituted *per se* ineffectiveness of counsel and that the trial court should have granted the juvenile's motion to file an appeal *nunc pro tunc.* Nevertheless, *A.P.* is distinguishable from the instant case because, here, appellant has forfeited his appellate rights due to his fugitive status at the time of appeal, under the rule of *In Interest of Thomas, supra.*

■ The Pennsylvania Rules of Appellate Procedure expressly provide for the quashing of an appeal where appellant is a fugitive. Pa.R.App.P. 1972(6)[7]. On March 25, 1993, the Commonwealth filed its first motion to quash this appeal on the ground that appellant had failed to file his appeal within thirty days of the order from which the appeal had been taken. On March 29, 1993, the Commonwealth filed a second motion to quash, pursuant to Pa.R.App.P. 1972(6), upon discovering that appellant was on fugitive status at the time of his appeal. In any event, it is within the discretion of the Court to dismiss an appeal either on a motion by the Commonwealth, Pa.R.App.P. 1972, or to take such action *sua sponte. Commonwealth v. Passaro, supra* 504 Pa. at 615, 476 A.2d at 348.[8]

■ Ordinarily, this Court would grant the appellant leave to file an appeal *nunc pro tunc,* especially when a

---

7. Pa.R.App.P. 1972 states in pertinent part that any party may move: (6) "To continue generally or to quash because the appellant is a fugitive."

8. *But see Commonwealth v. Judge,* 530 Pa. 403, 609 A.2d 785 (1992) (Supreme Court of Pennsylvania is mandated to review all death sentences pursuant to 42 Pa.C.S.A. § 9711(h) because of the severity and finality of the sentence and to insure that the sentence comports with the Commonwealth's death penalty statute, even where the defendant has forfeited his appellate rights by virtue of his fugitive status).

juvenile's appellate rights are jeopardized due to counsel's failure to file a timely appeal. *In Interest of A.P., supra.* However, the Pennsylvania Rules of Appellate Procedure and relevant case law expressly provide for the quashing of an appeal where appellant is a fugitive at any time after post-trial proceedings commence, regardless of appellant's status as a juvenile offender. *In Interest of Thomas, supra.* Accordingly, we grant the Commonwealth's motion to quash, and dismiss this appeal.

Appeal quashed.