# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nicholas Muma,                                  :
                              Petitioner         :
                                                :
                v.                              :     No. 1535 C.D. 2018
                                                :     Argued: September 10, 2019
Pennsylvania Department of Health,              :
Division of Nursing Care Facilities,            :
                              Respondent         :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION BY
JUDGE COHN JUBELIRER                    FILED: December 18, 2019

        Nicholas Muma (Petitioner) petitions for review of a Memorandum Opinion
and Order of a Hearing Officer of the Pennsylvania Department of Health, Division
of Nursing Care Facilities (Department), denying Petitioner's Request for a Hearing
and Application to file Appeal *Nunc Pro Tunc* (Application) and granting the
Department's Motion to Quash Appeal as Untimely (Motion to Quash).  The
Department entered a finding of abuse on the Nurse Aide Registry (Registry) for
Petitioner when it did not timely receive Petitioner's request for a hearing.  Petitioner
filed the Application, seeking to proceed, *nunc pro tunc*, on a request for an
administrative hearing filed one day after the deadline and argues the Hearing
Officer abused his discretion or committed an error of law in denying that request.
After careful review, we find the Department's process here is not in accordance
with the plain language of the Pennsylvania General Rules of Administrative

Practice and Procedure (GRAPP),[1] and that the Department abused its discretion when, applying *nunc pro tunc* **appeal** standards, it denied Petitioner's untimely request for an **initial hearing**. We therefore vacate and remand for the Department to conduct the hearing that Petitioner seeks.

## I. Factual Background

### a. The Department and the Social Security Act

In order to understand the Department's actions with regard to Petitioner, it is necessary to review the Department's obligations and procedures for maintaining the Registry. The Department is responsible for ensuring skilled nursing facilities[2] in Pennsylvania that participate in Medicare and Medicaid programs are in compliance with federal requirements set forth in Section 1396r of the Social Security Act, 42 U.S.C. § 1396r. As part of its obligations under the Social Security Act, the Department is required to establish and maintain the Registry, which is a list of all individuals who have completed nurse aide training. The Department must report on the Registry any findings of resident neglect or abuse. Upon reviewing and investigating any allegations of neglect or abuse in a skilled nursing facility by a nurse aide, the Department

> shall, after providing the individual involved with a written notice of the allegations (including a statement of the availability of a hearing for the individual to rebut the allegations) and the opportunity for a hearing on the record, make a written finding as to the accuracy of the allegations. If the State finds that a nurse aide has neglected or abused

---

[1] 1 Pa. Code §§ 31.1-35.251.
[2] A skilled nursing facility is defined as a facility that provides skilled nursing care and rehabilitation services to residents and meets the requirements set forth in the Social Security Act, such as maintaining a qualified staff. Section 1395i-3 of the Social Security Act. 42 U.S.C. § 1395i-3.

2

a resident or misappropriated resident property in a facility, the State shall notify the nurse aide and the [R]egistry of such finding.

42 U.S.C. § 1395i-3(g)(1)(C). The Department follows GRAPP for this purpose by issuing orders to show cause to give notice of allegations. 1 Pa. Code § 35.14. If the Department ultimately enters a determination of abuse on the Registry for an individual, skilled nursing facilities are prohibited from employing those individuals. 42 U.S.C. § 1396r(b)(5)(C).

b. *Order to Show Cause and Final Determination*

The Department notified Petitioner by Order to Show Cause mailed July 13, 2018, that, after investigation, the Department determined that Petitioner engaged in two instances of misconduct involving abuse of residents while Petitioner was working as a nurse aide at "a long term nursing care facility certified to participate in the Medicare program and governed by Federal and State regulations." (Certified Record (C.R.) at 58.) The Order to Show Cause advised Petitioner:

> In accordance with the [GRAPP], 1 Pa. Code §[]35.14, you must show cause why each of these determinations should not be entered on the Registry. You may do so by requesting an administrative hearing and presenting your arguments to a hearing officer as to why each of the Division's determination[s] [are] in error. If you want a hearing, you <u>must</u> file the attached Notice of Request for a Hearing (ATTACHMENT A) within <u>30 calendar days</u> of the <u>Date of Mailing</u> of this Order . . . .
>
> . . . .
>
> Failure to request a hearing by returning the attached Notice of Request for a Hearing form as instructed will be considered a waiver of all objections to the determination(s) detailed in this Order and will result in the determination(s) being entered in the Registry.

(*Id.* at 58-59.)

3

Having received no request for a hearing by Petitioner within 30 days, the Department, by letter dated August 15, 2018 (Final Determination), notified Petitioner that the determinations as to his misconduct were entered on the Registry. The Department advised Petitioner that the entry of these determinations on the Registry prohibited him "from future employment in any nursing facility," as well as "participati[on] in re-training programs, re-testing, and obtaining registry numbers." (*Id.* at 49 (emphasis omitted).)

*c. Untimely Hearing Request and Counsel's Letter*

Also on August 15, 2018, the Department received via fax Petitioner's request for a hearing dated August 14, 2018, filed by Petitioner's former counsel (Former Counsel), wherein Petitioner challenged the factual basis for the determinations in the Order to Show Cause. Shortly thereafter, the Department received a letter dated August 29, 2018 (Counsel's Letter) from Petitioner's current counsel (Counsel). Counsel stated that Petitioner contacted him following receipt of the Department's Final Determination. Counsel explained that Petitioner entered into a fee agreement with Former Counsel for representation at the Department Hearing. Attached to Counsel's Letter was a receipt for Petitioner's $500 payment to Former Counsel and a copy of his cancelled check for that amount, both dated August 1, 2018. (Reproduced Record (R.R.) at 8a-9a.) Also attached was a fee engagement letter dated and signed by both Petitioner and Former Counsel on August 1, 2018. The fee engagement letter provides that Former Counsel will represent Petitioner in his "Administrative Hearing." (*Id.* at 6a-7a.) Counsel further explained that Petitioner believed he was being properly represented by Former Counsel and was surprised when he received the Final Determination. According to Counsel's Letter, Petitioner

4

then tried to contact Former Counsel, but was unsuccessful, as Former Counsel "was not taking [Petitioner's] calls." (C.R. at 45.) Petitioner then contacted Counsel.

In light of these circumstances, Counsel requested the Department either (1) "accept the request for a hearing that was apparently filed two days[3] late by [Former Counsel]," or (2) "given the explanation provided in this letter, which seems to clearly indicate that the late filing was not the fault of [Petitioner,] . . . consider this letter as a request *nunc pro tunc* for a hearing." (*Id.*) If a formal motion or petition was required, Counsel indicated he would prepare one. Counsel requested a representative from the Department to call or email him in response to Counsel's Letter. Counsel faxed Counsel's Letter to the Department on August 29, 2018, and emailed the same to a representative at the Department the next day, requesting to be contacted about the situation. A Department representative informed Counsel that the letter was received and under review. (*See id.* at 18-19.)

### d. *Motion to Quash and Answer*

On October 1, 2018, the Department filed the Motion to Quash Petitioner's appeal. Arguing that Petitioner's request for a hearing was faxed, rather than mailed, and beyond the 30-day deadline, the Department argued Petitioner's request was not in compliance with GRAPP and the Hearing Officer was without jurisdiction to consider the appeal. The Department also asserted that Counsel's Letter was a "non-compliant" request for an appeal *nunc pro tunc* that admitted to the late filing. (Motion to Quash ¶ 14, C.R. at 35.)

---

[3] Petitioner's request for a hearing was actually one day late. Thirty days after the July 13, 2018 Order to Show Cause was Sunday, August 12, 2018. Therefore, Petitioner's request for a hearing was due on Monday, August 13, 2018, and the Department received it on Tuesday, August 14, 2018.

Petitioner filed the Application and an Answer to the Department's Motion to Quash. Petitioner admitted to receipt of the Order to Show Cause, the 30-day deadline for filing a request for hearing, and his untimely filed request for a hearing. Although Petitioner also admitted that an untimely filing is considered to be in default under GRAPP, Petitioner argued that the Department had jurisdiction to hear the matter upon granting his request to appeal *nunc pro tunc*. Relying on the Superior Court's decision in *In the Interest of A.P.*, 617 A.2d 764 (Pa. Super. 1992), regarding a right to appeal under the Post Conviction Relief Act (PCRA),[4] Petitioner argued that where a party is denied the constitutional right to appeal due to counsel's ineffectiveness, an appeal *nunc pro tunc* should be granted. Further, Petitioner stated that he "preserve[d the] right to advance the possibility that" Former Counsel engaged in fraudulent conduct warranting *nunc pro tunc* relief. (Answer to Petitioner's Motion to Quash and Application to File Appeal *Nunc Pro Tunc* ¶ 18, C.R. at 14.) Petitioner also argued that after the Department acknowledged receipt of Counsel's Letter, the Department made no contact with Petitioner regarding his request until the Motion to Quash was filed. Therefore, Petitioner requested the Hearing Officer deny the Motion to Quash. Incorporating his arguments from Counsel's Letter, Petitioner again requested permission to file his hearing request *nunc pro tunc*.

e. *Memorandum Opinion and Order*

On October 23, 2018, the Hearing Officer issued the Memorandum Opinion and Order. The Hearing Officer found that the Order to Show Cause clearly set forth the time for appeal, as determined by GRAPP, and Petitioner did not comply. Petitioner sought to extend the 30-day deadline for filing his response in order to

_____

[4] 42 Pa. C.S. §§ 9541-9546.

obtain a hearing to "challeng[e] the Department's findings," the Hearing Officer explained, but such relief was not warranted. (Memorandum and Order at 4.) The Hearing Officer reasoned appeal periods are jurisdictional and acknowledged there are "extraordinary circumstances" in which *nunc pro tunc* relief is warranted, but inaction or negligence of "legal counsel is not considered a sufficient excuse for failing to file a timely appeal." (*Id.* at 5-6 (citing *Cook v. Unemployment Comp. Bd. of Review*, 671 A.2d 1130 (Pa. 1996); *Bass v. Commonwealth*, 401 A.2d 1133 (Pa. 1979)).)

The Hearing Officer disagreed that *A.P.* was similar to Petitioner's circumstances, as it involved a constitutional right to appeal from a court of record, and the Department was not a court of record. Rather, as an administrative agency, the Hearing Officer explained, the Department did not have "the Constitutional authority to grant [Petitioner's] request for an appeal[] *nunc pro tunc*." (*Id.* at 7.) Further, the Hearing Officer noted that Petitioner's "appeal" was more accurately a request for an initial hearing; thus, case law for requests to appeal *nunc pro tunc* was inapposite. Even if Petitioner's request was treated as an appeal *nunc pro tunc*, the Hearing Officer determined that such relief was contrary to law because an attorney's negligence does not warrant *nunc pro tunc* relief. Additionally, the Hearing Officer found Petitioner had not alleged sufficient facts in his Application to demonstrate fraud by Former Counsel. Accordingly, the Hearing Officer granted the Department's Motion to Quash and denied Petitioner's Application. Petitioner appealed.[5]

---

[5] Our "review is limited to determining whether constitutional rights were violated, whether an error of law was committed[,] or whether the necessary findings of fact are supported by substantial evidence." *Sklar v. Dep't of Health*, 798 A.2d 268, 273 n.7 (Pa. Cmwlth. 2002).

7

## II. Parties' Arguments

### a. Petitioner's Arguments

Petitioner argues that the Hearing Officer abused his discretion or committed an error of law when he granted the Motion to Quash and denied his Application. Petitioner asserts that he was unaware until receiving the Final Determination that Former Counsel had not filed a request for a hearing, and Petitioner acted in a reasonable and appropriate manner to remedy the situation at that time. As a result of the Final Determination, Petitioner contends that he lost his employment and is unable to secure other employment in the same field. Because of Former Counsel's inaction, Petitioner asserts he also lost the opportunity to contest the matter before the Final Determination was issued.

Petitioner contends that although he seeks a request for a hearing *nunc pro tunc* rather than "an appeal, per se," case law governing *nunc pro tunc* appeals is applicable, as Petitioner is contesting the findings made by the Department. (Petitioner's Brief (Br.) at 7.) In fact, Petitioner asserts, it may be "more egregious to deny" a *nunc pro tunc* request for a hearing **to be** held than an appeal from a hearing that **was** held. (*Id.* at 8.) Petitioner notes that *nunc pro tunc* relief is warranted where there is fraud or breakdown in the administrative process and further asserts that Former Counsel was negligent, at a minimum, although "it is not totally clear that fraud was not involved." (*Id.*) Petitioner argues, even if Former Counsel was negligent, Petitioner was not, and his non-negligent conduct should be sufficient to grant *nunc pro tunc* relief.

Moreover, Petitioner argues, where a party's counsel is ineffective and deprives the party of a constitutional right, the party should be able to proceed on an appeal *nunc pro tunc*. *A.P.*, 617 A.2d at 768. Like the appellant in *A.P.*, Petitioner's

8

due process rights under the Fourteenth Amendment to the United States Constitution[6] are implicated, as the Department's Final Determination deprived him of his occupation and future employment in the nursing field without an opportunity to be heard. Such a deprivation requires due process, which in this case is the pre-deprivation hearing that Petitioner seeks *nunc pro tunc*. Citing to cases in other jurisdictions involving entering determinations on nursing registries, Petitioner contends there is "no question" in those cases that the nurses appealing were entitled to a hearing to satisfy due process. (Petitioner's Br. at 13 (citing *Victor v. New Mexico Dep't of Health*, 316 P.3d 213 (N.M. Ct. App. 2013); *Molden v. Mississippi State Dep't of Health*, 730 So.2d 29 (Miss. 1998)).) For these reasons, Petitioner asks us to reverse the Memorandum and Order and allow him to proceed on the request for a hearing *nunc pro tunc*.

### b. *Department's Arguments*

The Department responds that the Hearing Officer did not abuse his discretion in issuing the Memorandum Opinion and Order. The Department emphasizes that *nunc pro tunc* relief is an extraordinary remedy that should not be "permitted as a matter of grace or mere indulgence." (Department's Br. at 8.) The Department asserts Petitioner is not entitled to *nunc pro tunc* relief and the cases upon which he relies to argue otherwise are distinguishable, as those cases involved non-negligent conduct and Petitioner asserts that Former Counsel was negligent. Negligence of a third party or appealing party is not sufficient for *nunc pro tunc* relief. Further, the Department argues Petitioner's assertion that Former Counsel was negligent precludes Petitioner's argument that Former Counsel may have engaged in fraud. While Petitioner's circumstances might be unfortunate, according to the

---

[6] U.S. CONST. amend. XIV.

9

Department, "equity does not come into play where jurisdictional lines are drawn," based on untimely appeals. (*Id.* at 10.) Because Petitioner's late request for a hearing does not fall within the non-negligent circumstances exception to *nunc pro tunc* relief, the Department asserts that the Hearing Officer properly denied Petitioner's Application.

With regard to Petitioner's due process argument, the Department responds that Petitioner waived this argument by not raising it in his statement of questions involved in his brief. Rule 2116 of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 2116. Even if this argument is not waived, the Department argues, Petitioner's due process rights were not violated. Due process in administrative contexts requires notice and an opportunity to be heard, and the Department claims Petitioner was provided with both when he received the Order to Show Cause with the form to request a hearing. Because Petitioner did not timely file the request for a hearing, the Department asserts he did not take advantage of the opportunity to be heard. Because Petitioner did not timely respond, the factual allegations were deemed admitted, pursuant to GRAPP. Therefore, there were no factual disputes, the Department properly entered the determinations on the Registry, and the Hearing Officer did not abuse his discretion or commit an error of law in issuing the Memorandum Opinion and Order. The Department asks us to affirm.

### III. Discussion

Petitioner makes a compelling due process argument. Contrary to the Department's argument, Petitioner has not waived this issue under Pennsylvania Appellate Rule of Procedure 2116(a). Rule 2116(a) states that a court will not consider a question "unless it is stated in the statement of questions involved **or is fairly suggested thereby**." Pa.R.A.P. 2116(a) (emphasis added). Petitioner's

10

statement of the question involved states, in relevant part, "[s]hould [Petitioner] have been permitted to file a Request for Hearing *nunc pro tunc* under the circumstances . . . ." (Petitioner's Br. at 3.) A request for a hearing is a request for an opportunity to be heard, which necessarily implicates due process. Therefore, Petitioner's due process argument is "fairly suggested" by his statement of the questions involved and is further elucidated in the body of his brief, and is not waived. Pa.R.A.P. 2116(a).

Relying on *A.P.*, Petitioner argues that where a constitutional right is at stake, a counsel's ineffectiveness should not preclude *nunc pro tunc* relief. In *A.P.,* which involved an appeal of a juvenile conviction under the PCRA, A.P. was adjudicated delinquent on drug charges and placed on probation. A.P.'s trial counsel filed post-trial motions, which were denied. A.P.'s trial counsel did not appeal within 30 days. A.P.'s new counsel filed the motion for leave to appeal *nunc pro tunc* more than 30 days later, which the trial court denied. On appeal to the Superior Court,[7] A.P. argued that the trial court erred by refusing to grant "leave to file an appeal *nunc pro tunc* where the failure to timely file [a] notice of appeal was due to ineffective assistance of counsel that was apparent on [the] record." *A.P.*, 617 A.2d at 766 (second alteration added). The Superior Court acknowledged that, under the Pennsylvania Constitution, juveniles and adults have a right to appeal to a court of record and a right to effective assistance of counsel. Further, "counsel's failure to properly effectuate an appellant's constitutional right to appeal, unless expressly waived by an appellant, is ineffective per se." *Id.* at 767 (footnote omitted).

The Superior Court found A.P.'s new counsel quickly filed a motion for leave to file an appeal *nunc pro tunc* upon discovering that the time for appeal had run,

---

[7] While not binding on this Court, decisions from the Superior Court may be persuasive. *A.S. v. Pa. State Police*, 87 A.3d 914, 919 n.9 (Pa. Cmwlth. 2014).

citing ineffectiveness of trial counsel. The Superior Court disagreed with the trial court's reasoning that *nunc pro tunc* relief was not warranted because there was no evidence of fraud or administrative breakdown. Rather, "because A.P. was denied his constitutional right to appeal . . . due to trial counsel's ineffectiveness, the proper course to be taken [was] to grant the right to appeal *nunc pro tunc*," in order for the "constitutional right to appellate review . . . to have any meaning under these circumstances." *Id.* at 768. Therefore, the Superior Court reversed the trial court.

While the Superior Court's reasoning in *A.P.* is persuasive and somewhat similar to Petitioner's circumstances, *A.P.* is also distinguishable in that it involved a *nunc pro tunc* **appeal**. The Department argues that the Hearing Officer was without jurisdiction because Petitioner's **appeal** was untimely. If Petitioner had filed a late **appeal**, we would agree with the Department because a timely appeal is a jurisdictional issue. *C.E. v. Dep't of Pub. Welfare*, 97 A.3d 828, 832 (Pa. Cmwlth. 2014) ("Failure to file a timely appeal of an administrative agency's decision creates a jurisdictional defect . . . ."). However, Petitioner has asserted that he did not file an untimely **appeal.** Instead his Former Counsel, for reasons unknown and not attributable to Petitioner, filed a **request for an initial hearing** one day after the deadline to request a hearing had passed. We agree with Petitioner that **an untimely request for an initial hearing is not equivalent to an untimely appeal**, as recognized by Hearing Officer. Petitioner's late request for a hearing is more akin to a "nonjurisdictional claim-processing rule[]," as explained by the United States Supreme Court in *Fort Bend County, Texas v. Davis*, 139 S. Ct. 1843, 1849 (2019). There, the Supreme Court "stressed the distinction between jurisdictional prescriptions and nonjurisdictional claim-processing rules, which seek to promote the orderly progress of litigation by requiring that the parties take certain procedural

12

steps at certain specified times." *Id.* at 1849 (citations omitted). The Supreme Court reasoned that "when Congress does not rank a [prescription] as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Id.* at 1850.

Prior to *Fort Bend*, this Court contemplated the difference between nonjurisdictional claim-processing rules and jurisdictional prescriptions in *Eathorne v. State Ethics Commission*, 960 A.2d 206 (Pa. Cmwlth. 2008), wherein we explained the *nunc pro tunc* standard is not properly applied where no appeal is at issue. There, the State Ethics Commission (Commission) sent the petitioner a findings report detailing the petitioner's alleged violations of the Public Official and Employee Ethics Act (Ethics Act).[8] Pursuant to the Commission's regulations and enabling legislation, the findings report advised the petitioner that an answer admitting or denying the allegations must be received by the Commission within 30 days. The findings report further advised that if the petitioner did not respond or provided only general denials, it would "be considered a default and deemed an admission of the individual fact[s]" pursuant to 51 Pa. Code § 21.5(k)(1). *Eathorne*, 960 A.2d at 208. One day after the deadline to respond, the petitioner filed the answer along with a request to file the answer *nunc pro tunc*, which the Commission denied.

This Court reversed the Commission's conclusion that the petitioner was not entitled to *nunc pro tunc relief* on his application to file an answer. Noting that the Commission's regulation allowed an extension of the time to file a response for good cause shown, this Court found that the Commission used the good cause standard governing the grant of untimely appeals, which was incorrect because no appeal was at issue. Instead, this Court explained, the correct standard to be applied was "a civil

---

[8] 65 Pa. C.S. §§ 1101-1113.

13

standard such as that which is applied to deadlines for civil actions under the Pennsylvania Rules of Civil Procedure." *Id.* at 211. Because the findings report "contained allegations of wrongdoing and was not a final determination or any determination of wrongdoing," the Court reasoned it functioned "essentially the same as a complaint." *Id.* We also noted the Ethics Act did not specifically require that good cause be shown prior to the expiration of the 30 days; therefore, the petitioner did not need "to invoke the *nunc pro tunc* fiction, which applies only where the applicant has missed a filing deadline." *Id.* Reasoning that where "the failure to timely file can be reasonably explained and the party has acted with reasonable diligence in attempting to cure the error, the petitioner should not lose his or her right to be heard and his or her day in court," this Court reversed the Commission and required it to accept the answer to the findings report that was submitted one day late. *Id.*

Although in *Eathorne* the Commission had a regulation allowing late answers for good cause shown, which is not the case here, our reasoning in *Eathorne* is still applicable as it focuses on the **differing nature of untimely appeals as opposed to untimely pleadings**. Petitioner should **not** be held to a *nunc pro tunc* **appeal** standard where his untimely filing at issue is an untimely **request for a hearing**. The civil standard for untimely filings that this Court alluded to in *Eathorne* and that should be applied here is exemplified by certain Rules of Civil Procedure that do not divest courts of jurisdiction based on a party's incomplete, unfiled, or untimely responses to factual averments. For example, where a party does not file an answer to a complaint in the required time and the complaining party files and is granted a praecipe for default judgment, the defending party can still file a petition to open the judgment. Pennsylvania Rule of Civil Procedure 273.3(b)(2), Pa.R.C.P. No.

14

273.3(b)(2). As the Pennsylvania Supreme Court has held, a court is warranted in opening a judgment where the record indicates that a party turned the case over to an attorney upon receiving the complaint, but the attorney does not timely file the answer, as the attorney's negligent conduct "provides sufficient justification for [the party's] failure to respond to the original case." *Dep't of Transp. v. Nemeth*, 442 A.2d 689, 691 (Pa. 1982). Similarly, under the rules governing discovery in civil cases, a matter set forth in requests for admission is deemed admitted unless the party objects within 30 days. However, a party may nonetheless move to withdraw or amend the admission. Pennsylvania Rule of Civil Procedure 4014, Pa.R.C.P. No. 4014.

Petitioner's **untimely request for an initial hearing** in response to the Order to Show Cause is similar to these nonjurisdictional claim-processing rules. As opposed to untimely appeals, which divest the agency or Court of jurisdiction, Petitioner's untimely request for an initial hearing is governed by GRAPP, which provides:

> A person upon whom an order to show cause has been served under § 35.14 (relating to orders to show cause) **shall, if directed so to do, respond to the same by filing** within the time specified in the order **an answer** in writing. The answer shall be drawn so as specifically to admit or deny the allegations or charges which may be made in the order, set forth the facts upon which respondent relies and state concisely the matters of law relied upon. . . . A respondent failing to file [an] answer within the time allowed shall be **deemed in default**, and relevant facts stated in the order to show cause **may** be deemed admitted.

1 Pa. Code § 35.37 (emphasis added).[9] Section 35.37 is silent on whether a failure to respond is a jurisdictional bar to the administrative agency's authority, thus, "courts should treat the restriction as nonjurisdictional in character." *Fort Bend*, 139 S. Ct. at 1850. Furthermore, the Department's reliance upon Petitioner's purported noncompliance with Section 35.37 of GRAPP is misplaced because Petitioner did not file an answer, nor was he directed to do so. Instead, the Order to Show Cause informed Petitioner that he must show cause "by requesting an administrative hearing and presenting [his] arguments," (C.R. at 58), which Petitioner filed one day after the deadline, an action which should be governed by civil standards, as discussed above. Despite this, the Department considered Petitioner's lack of timely request for a hearing as "a waiver of all objections," similar to a failure to file an answer when directed to do so under Section 35.37. (*Id.* at 59.) Therefore, the Department's treatment of Petitioner's untimely request for a hearing as jurisdictional is contrary to GRAPP.

Moreover, this Court has not interpreted Section 35.37 of GRAPP as jurisdictional. Notably, the few times this Court has reviewed untimely or insufficient responses to an order to show cause under Section 35.37, the agencies in question did not immediately enter final orders or determinations if a party did not respond or untimely responded to an order to show cause. Instead, the agencies filed praecipes to enter default judgment and deem facts admitted **before** further action, such as the entry of a final order or determination. *See, e.g.*, *Szerencsits v. Bureau of Prof'l & Occupational Affairs, Bd. of Accountancy* (Pa. Cmwlth., No.

---

[9] The language provided by the Commission in *Eathorne* tracked the language in this provision very closely with regard to the consequences for not responding to the findings report. Therefore, although the Commission's regulations allowed for an extension of time for good cause shown, while Section 35.37 of GRAPP does not, this Court's reasoning regarding untimely responses to factual averments is applicable.

16

1210 C.D. 2013, filed Apr. 4, 2014), slip op. at 3; *Ancharski v. Bureau of Prof'l & Occupational Affairs, State Bd. of Nursing* (Pa. Cmwlth., No. 1765 C.D. 2010, filed June 21, 2011), slip op. at 3; *Lazorick v. State Bd. of Dentistry* (Pa. Cmwlth., No. 1558 C.D. 2007, filed Jan. 24, 2008), slip op. at 3,[10] *Zimmerman v. Foster*, 618 A.2d 1105, 1107 (Pa. Cmwlth. 1992).[11]

Because Petitioner's untimely filing is a request for an initial hearing in response to factual allegations set forth in the Order to Show Cause, the prescribed time for response is **nonjurisdictional,** unlike an untimely appeal. Therefore, Petitioner, "act[ing] with reasonable diligence in attempting to cure the error" attributable to Former Counsel's inaction, should not be denied his opportunity to be heard. *Eathorne*, 960 A.2d at 211.

The Department's actions are inconsistent with notions of due process, particularly given the detrimental effect of a finding of abuse entered on a nurse aide registry. Such a determination implicates "the right to pursue a lawful occupation" under article I, section 1 of the Pennsylvania Constitution,[12] as the Pennsylvania Supreme Court explained in *Nixon v. Commonwealth*, 839 A.2d 277, 288 (Pa. 2003). Further, as recognized by the New York Court of Appeals in *Miller v. DeBuono*, 689 N.E.2d 518, 521-22 (N.Y. 1997), entries of abuse on a nurse aide registry "call[] into question [a petitioner's] reputation, honor[,] or integrity" on a list available to the

---

[10] These unreported opinions of the Court are cited for persuasive value in accordance with Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

[11] In *Zimmerman*, this Court held that the Insurance Commissioner properly found a respondent in default under Section 35.37 for failure to file an answer to an order to show cause in the required time, but it did not determine that the untimely response divested the Insurance Commissioner of jurisdiction. 618 A.2d at 1107.

[12] Article I, section 1 provides "[a]ll men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." PA. CONST. art I., § 1.

public at large. Additionally, any determination on that registry "publicly brand[s] [the petitioner] a patient abuser," the court explained, which in turn, affects the petitioner's current and future employment in the residential health care industry. *Id.* at 522. Accordingly, the New York Court of Appeals cautioned that "procedural safeguards established by the [s]tate" should be sufficient to prevent deprivation of a constitutionally protected interest. *Id.* The Department's process here, which is not in accordance with the plain language of GRAPP and denies Petitioner his opportunity to be heard in the first instance, does not reflect such procedural safeguards that should be provided when significant interests are at stake, as they are here. Therefore, the Department abused its discretion, and we vacate and remand for the Department to conduct the hearing that Petitioner requests.

## IV. Conclusion

The Department abused its discretion when, applying *nunc pro tunc* **appeal** standards, it denied Petitioner's untimely request for an **initial hearing** resulting from Former Counsel's inaction. As a result, Petitioner was denied his opportunity to be heard through no fault of his own. Accordingly, we vacate the Hearing Officer's Memorandum Opinion and Order denying Petitioner's Application and granting the Department's Motion to Quash and remand for the Department to hold the hearing that Petitioner seeks regarding the factual allegations set forth in the Order to Show Cause.

_____
**RENÉE COHN JUBELIRER,** Judge

18

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nicholas Muma, : 
                     Petitioner : 
               :
            v. : No. 1535 C.D. 2018
               :
Pennsylvania Department of Health, :
Division of Nursing Care Facilities, :
                 Respondent :

# O R D E R

**NOW**, December 18, 2019, the Memorandum Opinion and Order of the Pennsylvania Department of Health, Division of Nursing Care Facilities (Department) is **VACATED**, and this matter is **REMANDED** for the Department to hold a hearing in accordance with the foregoing opinion.

Jurisdiction relinquished.

_____
**RENÉE COHN JUBELIRER,** Judge